The Texas Supreme Court has unequivocally articulated the principle that we think is controllable in this case. When it said, courts were obliged to enforce the party's bargain according to its terms. As we have said time and again, courts may not rewrite a contract under the guise of interpretation. That comes from the Sundown Energy case, I don't know. In this case, the district court did exactly what the Texas Supreme Court said courts cannot do. It ignored very clear, very simple, straightforward provisions in this lease agreement that's at issue that require the ability of UPS Supply to provide property insurance to cover damage to the building at some release and repair property damage to the building caused by fire or other casualties. Based on that erroneous interpretation of the contract, the court entered summary judgments against my client in favor of the UPS defense. We asked the court to correct those errors. Now, the district court's ruling ignores a number of fundamental principles of contract interpretation. The first and most obvious that this court is well familiar with, go to, is what does the contract say? What is the plain meaning of the words? Here we've got two provisions at issue. Section 8 and Section 20 of the lease agreement. Section 8 says very clearly, UPS is required to obtain insurance on all risk basis for equivalent form, replacement cost against loss or damage to the building, and all other improvements now or hereafter located on the land. Very expensive. Section 20 says if the building or other improvements on the land shall be damaged or destroyed by fire or other casualties, UPS shall, at its sole cost and expense, adjust the loss with the insurance company and promptly rebuild or replace such building or other improvements. And I submit there's no ambiguity whatsoever in that language. There's no other language in those sections that contradicts or undermines the plain reading of what they say. And there's no other language anywhere else in the contract that undermines or contradicts it. There's simply no other language that addresses casualty loss or casualty insurance. UPS has throughout said that the court interpreted this, the district court interpreted it to prevent some conflict. But they've never identified what conflicts with these provisions that talk about property insurance and casualty loss. There is none. In fact, there are other provisions that are consistent with what we're saying is the very simple, plain interpretation of that language, particularly when it comes to insurance. Why do I say that? Well, Section 8D in the insurance section of the contract says that if UPS fails to meet its obligations to buy insurance, that the landlord, my client, can go out and get the insurance itself and charge UPS, make them reimburse that. Well, that's clearly consistent with the notion of what Section 8A plainly says, which is UPS is responsible for securing that property insurance. Likewise, in paragraph 22 of the contract, it's the default provision. And it has the typical language that you can be in default for being in any failure to comply with your obligation to this contract. But there's a specific provision that says UPS will be in default if it fails to provide the insurance required for the contract. There's no countervailing, contrary provision that says my client's going to be in default for not providing insurance because it's not their obligation. It's clearly UPS's. So that's the first point. What do those two provisions actually say? What do they plainly mean? Second point, which is related to that, is that the court said if the parties themselves give a specific meaning to a term, then the court has to enforce it. Here, the term at issue is building. What does building mean? It's quite clear when you see the definition. It's talking about the building. It was a bill to suit lease. It got very specific what all that would entail. And even the district court said, yeah, building as a general term used there means the whole building, no doubt about it. However, for its own reasons, which we'll get into in a second, the district court went on to say, well, but in some cases, in some provisions, building doesn't mean building. It means parts of the building. Well, there is no other provision in the contract that gives a contrary, contradictory, or alternative definition of building. There's only the one. Building means building. The district court was focused on, as UPS has been, section 11, which deals with maintenance of the building. And we're going to talk more about that in a minute. Let me ask you a threshold question. Certainly. Is it in your view that, I mean, you're obviously arguing it's trial court here. Is your view that whether stated so or otherwise, the court thought the lease was ambiguous and interpreted it the way that it did? Or is it clear that the court didn't think it was ambiguous but just came to the conclusion that it did? It's clear that the court denied it said so. The opinion says neither party argues it's ambiguous. I find it's not ambiguous. I don't find it's ambiguous. Well, that's what I thought. I just wanted to be sure that I had the correct understanding. Sure. Because then that goes back to the heart. If the document is there and it's looking at it so, I don't want to say where or how, but how do you say the court went wrong? I mean, if the language is there, it's clear as you say it is, I mean, sort of what happened? Well, I was just about to get into that. Oh, okay. I'm sorry. Which is, what did the court do then? What the court did was look to section 11 and say there are words of limitation, section 11, dealing with maintenance of the building. And that provision talks about the landlord shall maintain these parts of the building, the exterior of the walls, the roof. Well, it does say maintenance and repair. It does. It says shall maintain and do repair. And then it talks about, and the tenant shall maintain everything else essentially, interior, other improvements, sidewalks, et cetera, et cetera. And what's interesting about that to start with is section 11 doesn't redefine building, doesn't use some alternative definition of building. The term building means the same thing in section 11. What section 11 does is put other words around it. It says the exterior walls of the building, the roof of the building, the skylights. Well, that's not changing the definition of building. So what this district court then did at UPS's urging, which we think is just completely wrong, is say, well, let's take those limitations that are in section 11 and move them over to section 20 on casualty damage and move them over to section 8 on insurance. Well, that brings into play another, again, fundamental principle of contract interpretation is you don't take language that the parties could have put in a provision and write it in yourself as a court. The parties obviously knew how to limit the scope of what the building is. That's what they did in section 11 specifically. Here, they didn't do that in section 20. They didn't do that in section 8. But the court has gone out, reached out, brought those limitations over, and put them in section 8 and 20. Again, the Texas courts have been very clear about this. We don't impose language of limitation to change the party's bargain. When they could have put it in themselves, and they did, and we really don't do it, when they knew enough to put it in other provisions and decided not to here. And that's the FPL energy case we cited in our brief, which affects the Supreme Court. Very, very critical point here is that case had arguably similar types of analysis from the district court or the court of appeals, saying, well, these other provisions talk about renewable energy credits and energy, but the liquidated damages provision only lists renewable energy credits. They must have meant this as well. And the Supreme Court said, no. The fact that they didn't put it in proves the opposite, proves that they knew how to do it, chose not to, and we're going to enforce it as written. That's what we've got to do here. Now, there are other sections of the lease besides just Section 11 that make some reference to individual parts of the building or less than the entire building. Section 14 talks about where you can place signage, where the tenant can place signage. And it talks about can't put it on the exterior of the building, can't put it in the public spaces of the building. They knew how to say what parts of the building they wanted to oppose specifically if they did. Paragraph 19 talks about the landlord didn't provide any services during the court. It's the single-tenant bill pursuit, so it's not typical landlord-tenant. Landlord's not going to provide any services, they say, except for the landlord's obligation to maintain the exterior walls, et cetera. Well, the very next provision, Section 20, is the casualty damage. There, the parties didn't make that decision. They didn't say, except for the landlord's obligation to maintain and repair the exterior walls, tenant will repair all that casualty damage. It just said the tenant's going to repair all casualty damage. Again, the district court was clearly rewriting the parties agreement for them. And that brings me to what the rationale really was that the district court relied on, which is, ignore everything I just talked about. We read contracts as a whole. We don't want to render any provisions meaningless. And the district court thought, well, that means I should take these limitations of Section 11, put them over here, the casualty insurance provision. But that's a very clear misapplication of the rule that the court was talking about. There is nothing about reading Section 8 and 20 the way they're supposed to be read, the way they say, that does any violence to Section 11 at all. Section 11 is concerned with routine maintenance of the building. It is not rendered meaningless by the casualty damage provisions being interpreted as written. Casualty damage is simply a different thing from routine maintenance. 8300, my client, still has the obligation to maintain the outside walls, maintain the roof, and this is a long-term lease, decades. That's not a trivial or insignificant obligation. It rested with them. There was never any arguments that they were in breach of it or anything else. But it's very different from who pays for casualty damage. What is the insurance, the property insurance cover? Your property insurance never covers routine maintenance, wear and tear. That's a separate thing. I've worked in the area of aircraft engine work, and there's almost always both a maintenance agreement that comes from the manufacturer, you pay a certain amount, and they'll keep the engine up for you, but they also require that you have a casualty policy. If there's a bird strike and the engine fails, that's not covered by your maintenance agreement. It's the same situation here. It's a very obvious distinction that, for whatever reasons, the district court didn't accept. So ultimately, what the district court was doing is writing a contract that it thought made more sense that the insurance and casualty damage should follow the maintenance obligation. Now, we don't agree that necessarily makes more sense. There's nothing inherently more sensible about that. We've cited some authorities in our briefs saying, in commercial leases, parties are free to negotiate that. They may pick and choose who does what, particularly when it's a single-tenant, long-term lease. But put that aside. Even if the district court were correct, which we don't agree with, that it makes sense for those to follow each other. That's probably what most landlords and tenants would do. That just doesn't matter, and it takes us back to the beginning, Your Honor. Sophisticated parties, in particular in Texas, are allowed to contract as they see fit, and the courts are not going to, under the guise of interpretation, rewrite that bargain for them and disrupt their allocation of the risks and benefits of the contract for those which the court thinks make more sense. And that's what this case comes down to. With that, I say I'm out of time. I'll reserve the rest of my time for rebuttal. All right. Thank you, sir. All right. Mr. Berger. Thank you, Your Honors. May it please the Court. My name is Neil Berger on behalf of the Apple Lease in this case. Although there's a large record in this case, and there were many proceedings in the district court, and the district court, which I'm sure everyone has read, issued a 30-page, very detailed opinion on this matter. The actual issues are actually, it's fairly simple, and they follow very clear rules of the canons of construction that are adopted in Texas. And this case is quite interesting because there's no disputes on the facts. No, you didn't hear counsel say anything about the facts that are different from what I'll say. And there's no dispute on the law. We all cited the same cases, and the judge even pointed out the law is agreed to by the parties. What we disagree to is about the application of these principles of canon interpretation. Now, counsel mentioned two, he mentioned several of the canons of construction as far as definitions and read the language as clear. Absolutely agree. He also mentioned that we can't rewrite contracts. Absolutely agree. However, he didn't mention a fundamental tenet of Texas law is that in interpreting these contracts, you have to harmonize the language. And you harmonize the language so that a provision is not meant meaningless. And you have to look at all those provisions and read it together. And Judge Stewart, you had asked whether perhaps the judge found it to be ambiguous. I have no doubt that he did not. No party argued that it was ambiguous. And just because, as I'm sure your honors are well aware, two parties interpret contract differently, that does not mean that it's ambiguous. Mr. Berger, let me ask you this. I don't see any paragraph that deals with fire and casualty other than section 20. Why shouldn't section 20 control this because this was a hailstorm that caused the damage? That's a casualty. I understand, your honor. And that is the principle of my analysis that I'll get into now. So I appreciate if you could address that.  So there are a couple other canons of construction that I'd like to get into. Could you answer my question first? Absolutely. In reading all of the provisions together, including section 8, section 11, section 19, and section 20, the court first had to determine who was responsible for this damage, to repair the damage. And in doing so, the district court harmonized all these provisions to make a final determination that in interpreting this, in making all provisions mean something, the clear intent, and that's really the ultimate goal of contract interpretation, is to find the intent of the parties. The clear intent here was that the landlord is responsible for the exterior, and the tenant is responsible for the interior. So what the tenant is using, the interior of a 320,000-square-foot warehouse, there was— But see, that's bleeding over concepts. Because when one talks about, quote, harmonizing language, close quote, you don't harmonize something that's clear on its face. Said differently, if there's section 20 and it deals with X, there's no need to harmonize express language which says hail damage is excluded from this policy. You know, wind damage is excluded from the policy. It's expressed. So if the homeowner files a lawsuit and says, I've been paying premiums for 100 years, what do you mean this is not covered? Well, there's nothing to harmonize. You signed it, and it says excluded is hail damage. So what I'm saying, the notion of harmonizing, yes, it can, but if that exclusion says no hail damage, there's nothing to harmonize in that sense. I hear you, Danny. It's a concept, but to me it's sort of bleeding in against something else, that if there's express language that the sophisticated parties agree to in plain English, no ambiguity, that even if the court thinks, I don't know if I would agree to this, I mean, doesn't that opt out any kind of harmonizing if I'm wrong? I absolutely do, but there's another concept, the specific over the general. And so you look at the specific, and when you're dealing with the specific in this case, you can't ignore section 11 that says from and after the lease commencement date and throughout the term, tenant shall, at its own cost and expense, maintain the interior of all portions of the building other than the portions landlord is required to repair as set forth below. Why isn't section 20 the specific? Because the use of the word building, and this is what the trial court found in its analysis, that building is a subset of the demise premises as far as in the beginning of the contract. And so there's the demise premises and then there's building. And throughout this contract, building is used specific in certain ways and general in other ways. And so provisions 8 and 20 are general when they refer to the building. That's what the district court found. Where does it say that in the lease? By the way, it uses the term building. When it's specific, when it's reviewing, when it's determining specific responsibilities for who is responsible for the outside and who's responsible for the inside, it specifically couches building as landlord is responsible for, and it mentions the roof and skylights. And it does that in at least three separate areas. Isn't there a difference between maintaining a roof and good repair? Let's say your roof's 20 years old. It wears out. You know, you have to make repairs and maintain it. And an event such as a hailstorm or a tornado that causes damage that's outside of your routine maintenance and repair. So that's why I'm asking, why isn't section 20 the specific as opposed to the general? Because when it specifically talks about who's responsible for these parts of the building. In general? No, specifically, Your Honor, with 11 and 19, it mentions that the landlord is responsible for the roof and the skylights. And then it also, interestingly enough, and I need to hit two more points to answer your question fully. The insurance also, in section 20, look at section 20F, specifically allows UPS to be self-insured on this. And section 20, when it talks about, it's really, it's about adjusting. It requires UPS to cooperate to adjust the claim. Adjusting a claim is determining if it's valid. And that includes determining if a claim is valid. And so the contract specifically allows UPS to be self-insured and to adjust its own claim. And I think that's indication that there's no way, if it was responsible for the roof, that they would allow them to do that. Can't the contract be read to say, in general, the landlord is responsible for maintaining the roof, the skylights, the HVAC system, and the tenant is responsible for maintaining the interior. But, specifically, in the event of a casualty, then the tenant is responsible for maintaining the insurance to cover that casualty and to adjust that loss in however manner it chooses. Right. And for a point of clarification, the tenant was actually specifically responsible for the HVAC. And there's no argument that we paid to fix the HVAC system and did not seek reimbursement. Now, as far as another indication of who's responsible for what, when the building was built, I believe it's Section 17, which involves design and construction, the tenant was not allowed into the interior to begin its build-out until the exterior, including the roof, was sealed and complete. These are all in the contract. And this is what the court did. It said, okay, I see this as unambiguous. I see these provisions. They deal with building. They deal with demised premises. And they deal with certain responsibilities of each party. And at the end of the day, in reading everything to harmonize it, landlord, you're responsible for the exterior. Tenant, you're responsible for the interior. And that includes this matter of insurance. Now, Judge Ramirez, you had mentioned if you had asked them, they had said, well, in general, this, but as far as insuring, in general, the landlord is responsible for the roof. But specifically, tenant is responsible to insure it. There was a policy issue, was there not?  There's no doubt about that. And did the insurance company ever deny that it had responsibility just under the terms of the policy? Yes, the terms of the policy. What was their defense? That it wasn't covered under the policy. On what ground? That the insurance coverage only covered things that the tenant was responsible for. Well, the district court said that, but it wasn't in the policy. Judge, I believe it is in the policy because it's... The declarations that are in the summary judgment record specifically say that it's insurance, that the insured is required by contract to agree to insure. And that follows that they're required to insure what they're actually responsible for. They were required to name as an additional insurer any entity that required UPS to insure them. And the McCulloch contract required UPS in the policy to name 8300. And they did? And they did. I didn't see anywhere that the policy, under its terms, denied coverage for the loss. They denied coverage because of the way the district court read the contract. Well, they denied coverage before. Obviously, before the district court denied... The district court found that the insurance was correct to deny coverage because it was not insured under the policy. Again, it goes back to the very first... The threshold issue is who's responsible for the roof and skylights. And under the interpretation, after applying these canons of construction, the court found the roof and the skylights unambiguously are the responsibility of the landowner. I understand that, but the court didn't consider Section 20. The district court thoroughly analyzed Section 20 and found it to be a general use of the term building. And the court also noted that, to Judge Ramirez's point, if, because of the existence of Section 19, which comes right before Section 20, Council and I are actually in agreement that I think that's important, because Section 19 clearly says that the roof and the skylights are the responsibility of the landlord. For maintenance and repair. No, no. Section 19 are services by the landlord. And it says, from and after the lease commencement date, except for landlord's obligation to maintain the exterior walls, other than paint, the structure and roof, including skylights, of the building, as provided in Section 11, landlord shall be responsible for providing no services to the demised premises whatsoever. And it goes on a little bit. So basically, Section 19 says, landlord, you're responsible for the exterior, including the roof, including the skylights, and you have no other responsibilities after that. And then comes the insurance language. And again, the insurance, it could have had a notwithstanding. It could have said notwithstanding paragraph 19. If the parties intended for the landlord to be responsible for even casualty events affecting the roof, couldn't the parties have put that in the insurance? Why does it say that the tenant is required to obtain an all-risk or equivalent form on a replacement cost basis against loss or damage to the building, except for? Why require the tenant to insure the whole building as opposed to just the parts that it's responsible for? Again, it's the general use of building in that section versus the specific use of building in sections that clearly delineate who is responsible for what. My question is, if the parties had intended that, couldn't they have put that in that section requiring insurance? As counsel mentioned, parties are free to contract. And my position is that this contract, in order to render each of these provisions to have meaning and to harmonize it, and again, we both agree that it's unambiguous, in order to do that, the only sensible reading of this contract is that the landlord is responsible for the roof, including repairs. This was 22 years into a contract, and the issue of repairing the roof and maintaining it had never come up. It only came up after this hailstorm when the landlord decided it wanted a new $3 million roof. And at first it was a million, and then it changed to $3 million. And there were competing expert reports. Obviously this was not in the summary judgment because the court decided beforehand. The record was developed, but the court interpreted the language as meaning the landlord is responsible for the roof, and therefore we're not even going to decide if it needs to be replaced or repaired, for that matter. There were competing expert reports, and interestingly, the landlord's expert came back and said, you need to buy us an entire new roof. And UPS's expert came back and said, there are repairs that can be done to this. So that issue, I guess, is still out there. But I guess the point is that because the court determined that the responsibility is of the landlord, there's no need to get into repairs versus replace because they're responsible for all of it. And I will say, obviously the court granted summary judgment on four claims. They were all premised on the idea that the tenant, the UPS, was responsible for replacing or having insurance due to this casualty. And once the court found that was not correct, summary judgment flowed on all four claims. I believe that's the fourth. But the first is a declaratory judgment that UPS was responsible. Obviously that fails. Breach of the lease agreement. The breach complained of was not getting insurance. That's obviously conclusively wrong because there was insurance. So ultimately, does this come down to whether the damage to the roof was a result of its age and condition versus whether the damage to the roof was caused by a hail storm? And thank you, Judge Ramirez, because an important point under Section 20 is the obligation is to bring it to pre-damage condition. So wanting a new roof is not what Section 20 has. It's got to be the pre-damage condition. And so this was a 22-year-old roof. And so there's no way that the insurance would have to pay for a brand new roof. That's the reason you didn't just make a claim against the insurance company? There were two claims. UPS and the landlord made claims. And they were denied. But that's telling. And I appreciate you bringing that up because I sort of mentioned it earlier, that the obligation is limited to repairs to the precondition of that roof if the roof is in their responsibility, which I believe it's not. I'm running out of time. I'd just like to reiterate that I believe Texas law is clear that when you apply these canons of construction to an unambiguous contract in order to get the intent of the parties, when you harmonize all these languages, the landlord is responsible for the exterior. The tenant is responsible for the interior. And that includes any insurance responsibility to the repairs. I ask you to affirm the court's decision. All right. Thank you, counsel. All right. Mr. Bundle. Thank you, Your Honor. I'll try to move quickly. Judge Ramirez, to your point, that is exactly right, as you said in our brief. If there were a need to go to the specific versus general rule of construction, the casualty damage provision is the specific one because it's a specific kind of damage keeping the roof in good maintenance and repair is the overall general one. Counsel somehow has now phrased this the way I hadn't heard it before, which is the specific use of building versus the general use of building. I'm not sure that argument's even been made. I frankly can't really even understand it very well. The use of the word building is consistent throughout. Some terms containing limitations say these parts of the building. Others do not. Courts deal with this all the time. You enforce it where it's written that we're limited to this. If it's not there, then you read it the way it is. I guess under UPS's interpretation, the word building must appear 75, 80 times in this agreement. We're going to go through each time and have a court decide, is that the specific use or is that the general use of building? That seems to me to just be a nonsense argument at this point. Judge Davis, to your question about insurance, we have a fundamental problem there, as you probably saw in her brief. Judge O'Connor went to the claim on the insurance policy, whether there was a breach, without the policy in front of it. It's not part of the summary judgment record. Counsel telling you what it said is extra record at this point. Now, it came in later, and so we do know some things, and it's not necessarily limited to just what UPS took a contractual agreement to assume liability for. It's not worded that way. We can have a whole debate and should on remand about what the policy does and doesn't cover, but it's not part of the summary judgment record, nor is part of the summary judgment record in denial of the claim from the insurance company explaining why. What Judge O'Connor did here was, again, not only take the limitations, what the scope of responsibility is for maintenance for Section 11 and put them in Sections 20 and Section 8. He then took them a step further and put them in the insurance policy and said, well, the insurance policy can only cover what UPS was supposed to cover, and therefore we're going to say no claim on the policy either. And it seems to me, again, just to be obvious evidence, you can't make that decision on a claim on a policy without looking at the policy. And you can't even make that decision with respect to what's the scope of UPS's obligation to obtain insurance, which is Section 8, and repair casualty damage, which is Section 20. As this court said in Exxon Mobil v. Electric Reliability Services, which is at 868 Fed Third 408, those are two distinct obligations. The obligation to indemnify or, in that case, the liability policy, and the party had an obligation to indemnify the other party for certain things and had a separate obligation to obtain insurance against liability. And the court said, even if the obligation to indemnify was limited, that doesn't necessarily mean the obligation to obtain insurance was similarly limited. You have to look at the insurance provision and say, is it incorporating it that way? And in that case, the court said it was not. Again, here, I submit the same thing. The obligation to rebuild, repair under Section 20 isn't limited, but even if it had been, that's a separate question from this absolute stated responsibility to get property damage insurance for the building and all other improvements that are ever on the land. That's so expansive, it seems clear to me. I don't know what the panel will do, but if we agree with your interpretation of the contract, what is left on remand if we send this back? Well, there are a number of things. As counsel said, the judge kind of pre-committed the analysis once he reached the decision that the land board had the responsibility that the contract actually puts on the tent. Clearly, we didn't get to issues about what's the extent of damages, what's the amount that should be recoverable, is it free, you know, how worn out was the roof, any of those kind of things. So on all of our claims, the court has to go back. He cut us off on this very first legal issue, and so we have to go back and develop all that, whether that's going to be done in summary judgment or – Insurance coverage too, I suppose. And the same thing on the insurance claim. We have to go back and develop that and see what the district court is going to do with it. Now, I think technically the claim, the counterclaim by UPS for breach of contract against my client ought to be done. It's finished if the court finds we don't have that obligation to do repair for the hail damage. So there are a number of things that are going to have to be done on remand if the court reverses what I asked you to, reverse the judgment entirely and send it back to the district court so he can get it right. Thank you. Thank you, counsel. Thank you, counsel, both sides. The case will be submitted to the panel. We'll call up our third case for the morning.